Case number 14-1142, Copley Fund, Inc., Petitioner v. Securities and Exchange Commission. Mr. Hunenberg for the petitioner, Mr. Yoder for the respondent. Good morning. May it please the Court. My name is Paul Hunenberg for Petitioner Copley Fund. I would like to reserve two minutes of my time for rebuttal. This is the Mutual Reliability Accounting case. The SEC's order denying Copley Fund's request for an exemption is arbitrary and capricious for three reasons. First, the SEC failed to consider or address Copley Fund's unique operating history, a history of low redemptions, a history of blue chip stocks, a history of reinvesting dividends, reinvesting capital gains, and setting a reserve for future capital gains taxes that always exceeded those actually paid. Second of all, the SEC failed to consider an important aspect of the problem. It inflicted actual harm on present investors and redeemers in exchange for a hypothetical risk of harm to potential future investors and future redeemers for a harm that was unlike, that had never occurred and was likely never to occur. Third, the SEC failed to consider reasonable alternatives to simply saying you can't do it the way you want to do it, including an alternative based on full disclosure on which the securities laws are premised. The purpose of APA review is to prevent the very type of agency conduct challenged here, and to us it's not even close. The SEC's decision is not wrong, not just wrong, it's dead wrong and should be reversed. Now, first of all, there's nothing in the, in Copley Fund's history or in the record that would support the SEC's denial of the request for the exemption. Can I stop you there a moment? Of course you can. Because my first question is why, part of the problem is you're seeking an exemption here because you acquiesced when they first wanted you to change your accounting method. Why wouldn't you have simply challenged it at that point? Well, Your Honor, Copley Fund did try to challenge it at that point. Well, first of all, Copley Fund didn't want to be prosecuted. They were threatened with prosecution. And Copley Fund didn't want to have its principal, Mr. Levine, indicted or become a target. But from that moment, from the first notice from the SEC in September of 2007 saying, this doesn't, we've just discovered after at least 15 years this doesn't comply with GAAP and you've got to change it. Copley Fund tried numerous times over the next six years to get the SEC's attention and explain why in the unique circumstances of this fund, GAAP, what the SEC was mandating was contrary to GAAP. GAAP reflects a policy of full disclosures. That's what we wanted to do. What the SEC wanted this fund to do was misleading. So, Your Honor, for six years, our client tried to get the SEC's attention and explain and get someone to listen. When the SEC wrote back in 2009, finally, after a couple of years, I guess we started in 2008 with a long memorandum that's in the record, a long proposed alternate disclosures that would give transparency to the process. Finally, in December 2000, the SEC said no. And in December 2009, wrote back and said, the letter's basically a page and a half long. And they said, there's nothing different than when we first contacted you in September of 2007. And, oh, by the way, even though you're asking to revert back to your prior method, you must give this to your accountant because it reflects irregularities and improprieties in the way you're disclosing your information, which is a little dissonant since our guys weren't complying or are complying to this day. So then our guys spent the next couple of years trying to get a decision out of the SEC, and were stonewalled at every turn. So finally, we tried to go directly to the commissioners. And the division of the DIM, the Division of Investment Management, intercepted that letter and said, this isn't a special case. You can't go to the commissioners. So finally, finally in 2013, they said, you can't go to the commissioners, but why don't you seek an exemption? And to be fair, they said, we probably won't agree you're entitled to one, but you can ask for one. So September of 2013, we apply for an exemption, and nothing happens for four more months. Finally, we sue them in the district court, and they say, you can't do that. You've got to come to the Court of Appeals. So ultimately, we got the case resolved, and so we've been trying. But your challenge today is to their denial of the exemption. Yes, Your Honor, under 6C. And your disclosure proposal, could you just clarify that? Because it read a little bit differently in your brief from how it's represented in JA 235, where it is described as seeking to use two different methodologies in calculating an asset value, a gap-consistent methodology for purposes of pricing Copley's redeemable securities for purchases and redemptions under 284 and 22C1 under the Company Act, and a non-gap methodology in the financial statements. And was that, in fact, the proposal? No, Your Honor, that was never the proposal. And JA 235, I know, is the conclusion of the SEC's notice that led to its denial. That's another thing, Your Honor. They misstated completely what Copley's fund was proposing. And what Copley's fund was proposing in terms of disclosures appears in the record at JA 17, which is page 17 of our exemption request letter. Copley's fund had a two-part request. The first part was we would value net asset value using one of two alternate methodologies that removed all discretion from management. One was four times the five- or ten-year redemption rate, and the other was four times the highest daily redemption rate over a five-year period, plus full comparative disclosure. That's what we've always been asking about, asking for permission to do. So it would have been whichever one of the two proposals the SEC had allowed us to use, plus a chart comparing, on the one hand, our method permitted versus the SEC's method. So future investors and future redeemers would get the full picture of the risk that they were undertaking. And, frankly, it's been held by this court in Chamber of Commerce versus SEC, this court in 2005, that it's arbitrary and capricious for the SEC to reject, to adopt a rule when it fails to consider an alternative based on full disclosure. And as Justice Blackmun said in Pinter versus Dahl, the securities laws are premised on full disclosure. He called it a healthy economy purged by full disclosure. Can I ask a question about the hypothetical that's in the SEC's ruling, which has been the subject of much back and forth in the briefing? So you don't take issue with the proposition that if that rate of redemption, in fact, happened, that there would be a discrepancy between the asset value for those who redeemed and the asset value for those who remain? We take issue with it in the sense, Your Honor, that it's predicated on a hypothetical future capital gains payment that the company never incurred, that it always managed its assets in a way that it never paid capital gains. And if you think about the chart on page 73 of the record, which was the law firm memo trying to get the SEC's attention, they showed the management set reserved for future capital gains, the SEC mandated one, and a column of zeros from 1993 to 2007. So, Your Honor, hypothetically, you know, there's an interesting mathematical computation and it may not be wrong, but it has no basis in the record. Right, so in other words, if you buy the premises that lead to the math, the math is fine. The math is fine, but as the Supreme Court said and as this Court has said, a conclusion, an agency conclusion that bears no relation to the facts, an agency conclusion that bears no relation to the record is arbitrary and capricious and must be set aside. Okay, can I ask you this question, though? I get your point that you take issue with the factual premises and your argument is that set of circumstances can never really happen, it's never happened in our history, it doesn't make sense to base a decision on a hypothetical that's not grounded in reality. But if, suppose you lower the figures, I mean, people redeem sometimes, and what they're forecasting is a situation in which lots of people redeem, and your point is that that's just not really consistent with our history. But are we talking about matters of degree? In other words, you can envision scenarios in which some number of people redeem, maybe more than what you've had in the past, but not quite to the level that's forecast in the hypothetical. But if you have some level of redemption that exceeds what you've had in the past, not quite to the level in the hypothetical, you still have a discrepancy between the before and after picture. It just wouldn't be as significant as the one that's outlined in the hypothetical. Well, I think it's, Your Honor, I respectfully disagree. I think it's not really even a question of degree. It's basically a solution without a problem. I mean, the fund has always been able, through raising more money, managing its assets, it's never had to pay capital gains taxes. And whenever it has, it's been well within the reserve. This fund did not even experience high levels of capital gains in the 2008-2009 financial crisis. And that's after the SEC arbitrarily reduced its net asset value by 22 percent, based on no facts at all, just an accounting change. And the SEC has never once explained what caused them in 2007 to come to this realization that, oh, you're not following GAAP. And we also note that it was all about GAAP until we filed our exemption request, and then all of a sudden it was about dilution. So even there, the agency's been acting inconsistently. And it's probably not about GAAP anymore because they know that our disclosures are more consistent with GAAP and more accurate and more fair and present the picture of this unique fund more accurately than their way. That's not how I read their position, but I guess we'll hear from them shortly to state their position. Yes. I see my time is near up, so if there are no further questions, I will yield to the government. All right. Thank you. May it please the Court. My name is Stephen Yoder, and I represent the Securities and Exchange Commission. As a mutual fund under the Company Act, Copley holds itself out to the investing public as standing ready to honor redemptions of 100 percent of its shares at any time. Yet Copley applied for an exemption from the Act based on the premise that it would never need to honor redemptions above very low levels. The Commission acted well within its discretion to recognize that Copley's premise was inconsistent with its legal obligation under the statute. The Commission also exercised its expert judgment to determine that regardless of Copley's historical data, Copley simply cannot anticipate all the reasons that might lead shareholders to redeem at higher levels in the future. Indeed, Copley has never represented, either before the Commission or in this Court, that redemption levels will not rise in the future. And it's undisputed that if redemption levels did rise, then under Copley's proposal, investors would suffer disparate treatment contrary to a core principle of the Company Act. The Commission therefore properly found that Copley had failed to sustain its burden to show that its proposal was consistent with investor protection and that Copley should be required to record its full tax liability, just like every other mutual fund organized as a C Corporation. But the Commission does sometimes grant exemptions in the public interest. And I wonder why, in your view, given the performance of this fund, an exemption is not warranted in this case. Yes. The Commission found that Copley's historical data, its past performance, is not determinative for two reasons. First, because of Copley's legal obligation under the statute to honor redemptions at all times for all shares. It's issued redeemable securities, and investors are entitled to redeem those securities at any time for any reason or no reason at all. Secondly, the Commission determined that regardless of Copley's historical data, it's simply impossible to predict all the reasons why shareholders might choose to redeem in the future. And that expert judgment of the Commission should be given deference, respectfully, under this Court's precedence, even in the absence of record evidence. And what about side-by-side, you know, disclosure? They put everything out exactly the way you want them to. They disclose it to their shareholders. But they also say, by the way, we think this is really overly conservative, because as we look at our history and our tax, our actual tax exposure, this is what we think it looks like more, you know, under our business plan. Not okay. Right, Your Honor. And that's because fundamentally the Company Act here is not simply a disclosure statute. It goes beyond a disclosure regime and also imposes substantive protections for investors. That's reflected in the legislative history of the statute. It's reflected even in the language of the statute, Section 22, which we quote in our brief, which talks about the prevention of dilution of value to shareholders. And it's obvious that Copley's proposed disclosures would do nothing to prevent that sort of dilution in the event that redemptions rose. In addition, we also take issue with Copley's suggestion that its disclosure would actually be a full disclosure. In this case, Copley, as we understand its application at JA-17, would simply disclose alternative calculations of net asset value, based on the Commission's methodology and its preferred methodology. And the Commission reasonably found that Copley had not specified similar alternative disclosures for the financial statements themselves. That is, Copley would file simply a single set of financial statements following its preferred methodology. It would not give a similar comparison. The Commission found that that would not be adequate. Moreover, the Commission found that because it had determined to deny an exemption with respect to net asset value calculation, it would not make sense to grant an exemption with respect to the financial statements. So from the financial statements, you're saying that the SEC imposes both a floor and a ceiling on the financial statements? So in other words, if the disclosures, if the amounts stated in the financial statements were consistent with what you would like, which is that you assume the possibility of complete redemption, but then there's a star footnote that says, you know, by the way, we've never experienced redemption, even anything close to this in history. Here's a chart that shows what kind of redemption rates we've had in the past. That would be a problem? I'm sorry, if I understand your question, the question is, if Copley followed the Commission's methodology but included a footnote disclosure? Right. And it adds extra information that says, you know, we've done this in the way that you all would like us to do it. But then we're going to have additional information to our holders that says that we've never experienced redemption rates, anything approximating high levels. Here's our history of redemption rates. Sure. My understanding is that that's not what actually Copley had proposed here, that Copley – Right, and it may not be what they proposed, but I'm just saying if that's what they wanted to do, is there something in the SEC's decision that would preclude that from happening? It's not clear from this record how the Commission would treat that. That's something the Commission would have to analyze based on facts and circumstances, and certainly Copley is free to put forward a revised exemption application if it wishes to do so. But I don't want to speak out of turn for the Commission here. But would it even need an exemption to do that? Would it even need an exemption to do that? Because it would actually be reporting in the way that you want it to report. It would just be adding additional information based on its own history for the benefit of its policyholders. The way that you've described it, it sounds as though what Copley would propose would be a disclosure that is consistent with generally accepted accounting principles. And if it wasn't in fact consistent with GAAP, then Copley would not need an exemption from Regulation SX. When the SEC first tells the Fund that they're out of compliance, their focus seems to be on GAAP, right? Yes. You're not reporting this as you should. But when they deny the exemption, their focus seems to be on the Company Act and dilution. So one first question I have is what brought this to the SEC's attention? And then why the shift? Because Mr. Hollingsburg says the way we are proposing to do it is actually more consistent with GAAP. Yes, Your Honor. The record is not clear why this did not come to the attention of the staff of the Commission earlier, but once it did in 2007, the staff acted promptly and told Copley that its methodology was not acceptable, as you described. But I think it's important to recognize that these interactions were at the staff level. This was occurring through a comment letter process with respect to Copley's annual report. It occurred in the context of an enforcement investigation, and then later it occurred in the context of a request for a no-action letter from the staff of the Commission. All of those actions were by the staff of the Commission, and those staff actions were not binding on the agency as such. When Copley requested an exemption in September 2013, its exemption was governed by Section 6C of the Company Act. And looking at the language of that statute, it talks about what's necessary or appropriate in the public interest, what's consistent with the protection of investors, and with the policies, purposes, and provisions of the Company Act. And the Commission properly relied on analysis under that standard to determine that the exemption should be denied. I think Judge Schramassen had asked Mr. Hunenberg about, you know, his view, and I'd like to ask you yours on how do we know the difference between sort of predictive judgments and unfounded conjecture? You know, when are you being just artificially conservative and really harming this company versus, you know, doing a sound job in protecting the investing public? Yes, Your Honor. I think that one key distinction here that distinguishes our case from many of the cases Copley cites is that we're acting in the exemptive context. Copley is requesting an exemption from the rules that govern every other mutual fund. It's asking to be exempted and not account for its full tax liability the way that every other mutual fund is required to do so. But it actually is different from every other mutual fund, which was kind of interesting because it's not a WIC, right? That's correct. Copley is different from many other mutual funds because it is organized as a C corporation, but that is the reason why it is incurring a tax liability at the fund level and not simply at the investor level. The Commission's notice and order made it a point that it's aware of other mutual funds that have also organized as C corporations, but none of them has requested an exemption from the Commission. There's no C corporation that's operating as a mutual fund that has the model that Copley has. Is there any other kind of corporation or entity? I mean, could they have organized differently and done what they're doing in tax terms and had a different reporting regime applied to them? It's not clear. I'm not an expert on tax law, and so I don't want to venture outside too far afield from the record here. I think it's clear if they were a regulated investment company under the tax code, then they would have to distribute their income to shareholders every year, or at least 90%. In this case, they wanted to keep those earnings within the fund. They organized as a C corporation in order to do so. As a C corporation, they want to be able to recognize their assets with a full amount of appreciation in the fund. What they're asking to do is an exemption so that they don't have to report the associated tax liability with that appreciation. That's fundamentally different from what every other C corporation and every other mutual fund in this context is doing, and that's why the Commission is appropriate to hold Copley to the general standard. Is there no further questions? Thank you. Mr. Honigsberg, you're also out of time, but we will give you two minutes if you need it. Thank you, Your Honor. All of the points raised by government counsel have been addressed in our briefs other than this one, so I want to just make two points in response. The whole rationale of the SEC's denial of the exemption is that Copley couldn't guarantee a high level of redemption in the future. But if we step back and think about it. Well, isn't the whole rationale partly standardization? They say they require the same thing of everyone, and that allows the investing public to compare apples to apples. But, yes, Your Honor, that's what they're saying, but they're also saying, well, it's apples to apples except in Copley's case, which Your Honor has recognized as unique, and the examples the SEC gave back to Copley had nothing like Copley's business model. Doing it the SEC's way is the misleading way because it grossly understates the value of the fund, overstates the return because it discounts the assets, and makes it look like an unreasonably high operating expense ratio. So it's not really apples to apples the way the SEC is doing it. The way we're proposing is the way. No business, no mutual fund can give the guarantee that the government is asking from Copley Fund. Banks don't do it when they set capital reserves for their deposits. Science doesn't do it when it sets risk assessments. And building architects don't do it when they try to protect against the one in a zillion meteor that may fall on the roof. The other thing I want to say is the SEC is hiding behind the extra deference owed because we're seeking an exemption. Well, that was all we could do, and Judge Wald, no less an authority than Judge Wald, answered that in 1996 in the Dixon v. Secretary of Defense case, a case also involving an exemption, where Judge Wald says just because it's an exemption request, the agency's judgment has to be reasoned. It has to be based on the facts of the record. So in closing, the SEC's one-size-fits-all approach does not work with Copley Fund. The order of the commission should be reversed, remanded, with instructions to grant the exemption. If there are no further questions, thank you so much. Thank you. Case will be submitted.
judges: Brown, Srinivasan, Pillard